UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

JOHN E. HOLMES, ADULT WARD,⠀⠀⠀⠀⠀⠀)
By his Guardian, Patrick T. Hand, a Member of the )
⠀Bar of this Court⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
4900 Massachusetts Avenue, N.W., Suite 330⠀⠀)
Washington, D.C. 20016⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀) 1:17-cv-71
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MURIEL BOWSER, MAYOR, DISTRICT OF⠀⠀)
OF COLUMBIA⠀⠀⠀⠀⠀⠀⠀⠀)
1350 Pennsylvania Avenue, N.W.⠀⠀⠀⠀)
Washington, D.C.  20004⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀and⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
LAURA ZEILINGER, DIRECTOR, DISTRICT⠀)
OF COLUMBIA DEPARTMENT OF HUMAN⠀⠀)
SERVICES⠀⠀⠀⠀⠀⠀⠀⠀⠀)
64 New York Avenue, N.E.⠀⠀⠀⠀⠀⠀)
Washington, D.C. 20002⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants⠀⠀⠀⠀⠀)

## COMPLAINT

*(for Declaratory Judgment, Mandatory Injunction, Mandamus, 42 U.S.C. § 1983)*

Comes now the Plaintiff, John E. Holmes, by his Guardian, Patrick T. Hand (a member of

the Bar of this Court) and for his Complaint states:

### Preliminary Statement

In 2000, Plaintiff John Holmes, who then resided in the District of Columbia, was

adjudicated to be an "incapacitated individual" and thereby became subject to a guardianship

under the laws of the District of Columbia.  In 2002, Plaintiff was placed in a nursing home in

the State of Maryland by the Washington Hospital Center, with the consent of his undersigned

guardian, Patrick T. Hand.  In order that Plaintiff—an indigent—could gain admission to the

Maryland nursing home, Mr. Hand applied for Maryland Medicaid benefits.  Plaintiff has resided

1

in Maryland nursing facilities ever since then.

Plaintiff desires to move back into the District of Columbia but will require continued care in a nursing facility.  In order for Plaintiff to reside in a District of Columbia nursing facility, he must receive Medicaid benefits under the laws of the District of Columbia. However, the District of Columbia Department of Human Services—the agency charged with the responsibility of providing District of Columbia Medicaid benefits—refuses to process Plaintiff's Medicaid application, contending that Plaintiff is not a resident of the District of Columba and thereby is ineligible.  Conversely, Plaintiff contends that, even though he has resided in Maryland nursing facilities since 2002, he remains a resident of the District of Columbia.  In the alternative, assuming for purposes of argument that Plaintiff no longer is a resident of the District of Columbia, he has a right under the Constitution of the United States to travel to the District of Columbia for the purpose of residing there, and that under the facts of this case Defendants' refusal to process and grant Plaintiff's application for District of Columbia Medicaid benefits violates his Constitutional rights.

Unliquidated damages are not sought.  This is an action at law and in equity pursuant to 42 U.S.C. §1983 by which Plaintiff seeks: (a) pursuant to 28 U.S.C. §§ 2201 and 2202, a declaration that, under the laws of the United States (including the laws pertaining to State plans for medical assistance (Medicaid), 42 U.S. Code Subchapter XIX, and the United States Constitution), he is entitled to apply for District of Columbia Medicaid benefits; and (b) an order directing the Defendants —including the Defendant District of Columbia Department of Human Services—to process his application so that Plaintiff may return to the District of Columbia.

## Allegations Common to All Counts

1.     Jurisdiction of this Court is based on 28 U.S.C. §§ 1331, 1343(a)(3) and

(4).

2.      This is an action at law and for equitable relief.

3.      Plaintiff John E. Holmes alleges that he is a resident of the District of Columbia who currently resides at the Kensington Nursing and Rehabilitation facility in Kensington, Maryland.

4.      Defendant Muriel Bowser is the Mayor of the District of Columbia; her office is responsible for executing the laws of the District of Columbia and, where applicable, the laws of the United States, including but not limited to those relating to the District of Columbia plan for medical assistance ("Medicaid"), 42 U.S. Code Subchapter XIX.  Mayor Bowser is sued in her official or representative capacity only.

5.      Defendant Laura Zeilinger is the Director of the District of Columbia Department of Human Services; her office is responsible for executing the laws of the District of Columbia and, where applicable, the laws of the United States, including but not limited to those relating to the District of Columbia plan for medical assistance ("Medicaid"), 42 U.S. Code Subchapter XIX.  Ms. Zeilinger is sued in her official or representative capacity only.

6.      In 2000, Plaintiff John E. Holmes was adjudicated to be an "incapacitated individual" pursuant to the District of Columbia Guardianship, Protective Proceedings and Durable Power of Attorney Act of 1989, D.C. Code § 21-2001 *et seq.* in the District of Columbia Superior Court, Probate Division. *In re John Holmes*, Intervention No. 2000-86.  His brother, Norman Jones was appointed to be Plaintiff's guardian.

7.      According to a report filed by Plaintiff's court-appointed attorney, at the time the petition for the appointment of a guardian was pending, Plaintiff was terminally ill and had only six months to live; in fact, although Plaintiff remained physically impaired, his

condition improved dramatically.

8.      By Order filed October 25, 2001, Norman Jones was removed as guardian and the undersigned, Patrick T. Hand, was appointed successor guardian from the list kept by the Register of Wills of attorneys available for such appointments.  Mr. Hand has served as guardian under the laws of the District of Columbia, and the Probate Division of the District of Columbia has maintained jurisdiction over the guardianship, ever since then.

9.      At the time of Mr. Hand's appointment, Plaintiff—an indigent—received outpatient care at the Washington Hospital Center under the District of Columbia Medicaid plan operated pursuant to 42 U.S. Code Subchapter XIX, and he resided with his mother, Ruth Jones, at her home in Washington, D.C.

10.     At that time, the Washington Hospital Center was under contract with the District of Columbia to provide medical care to certain indigent residents of the District of Columbia, including Plaintiff.  See 42 C.F.R. § 435.403(e).

11.     Because of the severity of Plaintiff's illness, Ms. Jones no longer was able to care for Plaintiff in her home.

12.     Plaintiff's medical team at the Washington Hospital Center recommended that he be placed in a nursing care facility.

13.     On or about January 8, 2002, Mr. Hand called several District of Columbia nursing homes, including the now-closed Washington Home, the now-closed Northwest Health Care Center, the J.B. Johnson Nursing (now known as Unique Residential Care Center), and the Grant Park Nursing Care Center, none of which were able to accommodate Plaintiff at that time.

14.     At the same time, Plaintiff's social worker at the Washington Hospital

Center, Heather Hauck, initiated the process of placing him in a nursing home, including having a "Level of Care" assessment done.

15.   On March 5, 2002 Plaintiff was certified to require nursing care by Kitonga Kiminyo, M.D., a physician at Washington Hospital Center.  Appendix 1, attached hereto.

16.   Ms. Jones and her children were upset with Mr. Hand about the delay in finding Plaintiff a nursing home, because Plaintiff was presenting behavioral problems at Ms. Jones' house, in addition to having medical issues that she was unable to manage.

17.   On April 9, 2002, Plaintiff's sisters Tania Green, Melody Jones and Johnette Holmes brought plaintiff to a scheduled care plan meeting at the Washington Hospital Center.

18.   After dropping off Plaintiff at the hospital, Plaintiff's sisters drove off, thereby abandoning him.

19.   Mr. Hand was able to procure temporary housing for Plaintiff at the Gift of Peace Hospice in Northeast Washington, where Plaintiff previously had been a resident.

20.   Because of previous behavioral issues, Mr. Hand was informed that Plaintiff could only stay at the Gift of Peace Hospice for one week.

21.   On April 16, 2002, social worker Heather Hauck informed Mr. Hand that she had secured a bed for Plaintiff in Baltimore, and that if Mr. Hand did not accept the placement the Washington Hospital Center could not provide any further assistance.  Later the same day, Ms. Hauck informed Mr. Hand that she had found a bed for Plaintiff at the Heartland of Adelphi facility in  Prince George's County, Maryland.

22.   Despite his wish for Plaintiff to be placed in a District of Columbia

nursing facility, Mr. Hand accepted the placement in the Heartland of Adelphi facility because of the exigent circumstances.

23.     On April 26, 2002, Plaintiff was admitted to the Heartland of Adelphi facility.

24.     In order for Plaintiff to be admitted to Heartland of Adelphi, he was required to receive Maryland Medicaid benefits.

25.     Mr. Hand applied for Maryland Medicaid benefits on Plaintiff's behalf.

26.     Despite his adjudication of incapacity, at all times since Mr. Hand's appointment as guardian in 2002 Plaintiff has been "oriented times three" (to person, time, and place) and has been able to express his wishes.

27.     On July 21, 2003, Mr. Hand was informed by Crystal Ford of Heartland of Adelphi that because of behavioral issues Plaintiff would have to transfer to another nursing home.

28.     Mr. Hand agreed and asked that placement in a District of Columbia nursing home be pursued.

29.     On September 25, 2003, Ms. Ford informed Mr. Hand that Plaintiff's behavioral issues had subsided and recommended that Plaintiff remain at Heartland of Adelphi.

30.     Plaintiff continued to regularly request transfer to a District of Columbia facility.

31.     On May 26 and 27, 2004, because of new complaints about behavioral issues, Mr. Hand and staff at Heartland of Adelphi contacted the Grant Park Nursing Care facility in the District of Columbia about transferring Plaintiff.

32.     On June 1, 2004, Mr. Hand was informed by a Ms. Williams at Grant Park

that the facility could not take Plaintiff unless he was receiving District of Columbia Medicaid benefits.

33.     Plaintiff continued to request to be moved back to the District of Columbia, and in 2007, Mr. Hand applied for D.C. Medicaid benefits.

34.     By email from the office of then-Mayor Adrian Fenty dated July 30, 2007 (Appendix 2), Mr. Hand was informed:

> Medicaid applicants must prove that they are District residents before Medicaid benefits, including Long-Terms Care benefits, can be approved. Unless Mr. Holmes was placed in the Adelphi Nursing home by a District Government agency, his legal residence is in Maryland, as is indicated by his current receipt of Maryland Medicaid. Mr. Holmes must re-establish District residency before the District can approve Medicaid. There is no requirement to live in the District for a set period prior to eligibility. Residency begins  when the person starts living in the District with the intent to stay.

35.     In October 2009, Plaintiff moved from Heartland of Adelphi to the Bay Ridge Nursing Home in Annapolis, Maryland.

36.      In March 2011, Plaintiff moved from Bay Ridge to the St. Thomas More facility in Hyattsville, Maryland.

37.     In December 2012, Plaintiff moved from St. Thomas More to the Kensington Nursing and Rehabilitation Center in Kensington, Maryland, where he has resided ever since.

38.     Plaintiff has continued to request a move to a District of Columbia nursing facility.  According to Mr. Hand's file notes, these requests occurred on dates that include but are not limited to: April 12, 2012, July 25, 2012, November 2, 2012, July 3, 2013, January 24, 2014, March 17, 2014, November 4, 2014, February 4, 2015, May 11, 2015, June 5, 2015, May 11, and November 4, 2016.

39.     On May 13, 2016, Mr. Hand submitted another written application to D.C.

Medicaid on behalf of Plaintiff. Appendix 3.

40.     On May 20, 2016, Mr. Hand received an email from Assistant General

Counsel Robert C. Warren, Jr.  of District of Columbia Department of Human Services which

stated, in relevant part:

> The Department of Human Services (DHS), Office of the General Counsel (OGC), is
> responding to your May 13, 2016 to DHS Director Laura Zeilinger regarding your client,
> John E. Holmes', application for District of Columbia (District) Medicaid. Unfortunately,
> Mr. Holmes presently is a resident of the State of Maryland and is therefore ineligible to
> receive public assistance benefits in the District at this time. In your letter, you state that
> Mr. Holmes "*desires to move to the District of Columbia*." When Mr. Holmes becomes a
> resident of the District, he would then be eligible to apply for and receive public
> assistance benefits through the DHS Economic Security Administration (ESA).

(emphasis in the original).  Appendix 4.

41.     Thus, Defendants will not accept Plaintiff's application for District of

Columbia Medicaid benefits unless and until he physically moves back to the District of

Columbia, and Plaintiff has exhausted his administrative remedies.

42.     Because of his physical and mental limitations, as a practical matter it

would be impossible for Plaintiff to physically move to the District of Columbia for even a brief

period for the purpose of establishing residency, without endangering his health.

43.     Plaintiff—who is now 54 years-old—is incapable of employment due to

his physical and mental disability.

44.     Plaintiff's only income is SSI in the monthly amount of $733, which is

insufficient to afford the cost of nursing care, and he has no savings.

45.     Thus, Plaintiff is totally dependent on the Medicaid program for room,

board, laundry and health care.

46.     Under the Maryland Medicaid program, Plaintiff receives only a $30

monthly personal allowance to cover all expenses other than room, board, laundry and health

care.

47.    If Plaintiff were to receive D.C. Medicaid benefits, his monthly allowance would be at least $60.  Among other things, Plaintiff (who does not have any teeth, and Maryland Medicaid does not cover the cost of dentures) would be better-situated to obtain dentures.

COUNT ONE

*(Declaratory Judgment, Injunction, Mandamus or other Order Establishing Plaintiff's Residence as the District of Columbia Pursuant to the Laws of the United States)*

48.    Plaintiff incorporates by reference his allegations contained in the previous and subsequent paragraphs of this complaint.

49.    Title XIX of the Social Security Act authorizes the disbursement of United States funds to the States (including the District of Columbia) for medical assistance under the Medicaid program to, *inter alia*, disabled persons, including Plaintiff.  See 42 C.F.R. § 430.0.

50.    Under the Medicaid program, a participating State (including the District of Columbia) "must provide Medicaid to eligible residents of the State, including residents who are absent from the State." 42 C.F.R. § 435.403(a).

51.    At the time the Washington Hospital Center applied for Plaintiff to be placed in the Heartland of Adelphi facility in March 2002, Plaintiff was a resident of the District of Columbia.

52.    At that time, Plaintiff had been adjudicated to be an "incapacitated individual" pursuant to the District of Columbia Guardianship, Protective Proceedings and Durable Power of Attorney Act of 1989, D.C. Code § 21-2001 *et seq.*

53.    Pursuant to the laws of the United States, a person who "[i]s judged legally incompetent" is "considered incapable of indicating intent" for purposes of determining

his state of residence.  42 C.F.R. § 435.403(c)(2).

54.     As such, although Plaintiff had been adjudicated as "incapacitated" and not "legally incompetent" at the time he was placed in the Heartland of Adelphi facility, it might be argued that under the laws of the United States he was incapable of indicating the intent to abandon the District of Columbia as his "state of residence" in favor of the State of Maryland. 42 C.F.R. § 435.403(c)(2).

55.     At the time the Washington Hospital Center applied for Plaintiff to be placed in the Heartland of Adelphi facility, there were no facilities in the District of Columbia that were able to provide care to Plaintiff.

56.     At the time Plaintiff's guardian, Patrick Hand, facilitated Plaintiff's placement in the Heartland of Adelphi facility, Mr. Hand did not intend to abandon the District of Columbia as Plaintiff's "state of residence" but placed Plaintiff in the Maryland facility solely because of the exigent circumstances as described aforesaid.

57.     At the time the Washington Hospital Center applied for Plaintiff to be placed in the Heartland of Adelphi facility outside of the District of Columbia, it was under contract with the District of Columbia to provide medical care to certain indigent residents of the District of Columbia, including Plaintiff.

58.     Pursuant to 42 C.F.R. § 435.403(e):

> Any agency of the State, *including an entity recognized under State law as being under contract with the State for such purposes*, that arranges for an individual to be placed in an institution located in another State, is recognized as acting on behalf of the State in making a placement. *The State arranging or actually making the placement is considered as the individual's State of residence.*

(emphasis added).

59.     As such, when the Washington Hospital Center arranged for Plaintiff to be

housed at a Maryland nursing facility, the District of Columbia remained Plaintiff's state of residence for Medicaid purposes. Id.

60. Moreover, Plaintiff has had the functional ability to express his desired "state of residence" at all pertinent times, as described aforesaid, and repeatedly has expressed his desire to be placed in a nursing home in the District of Columbia, thereby rejecting Maryland as his State of Residence.

61. As such, because Plaintiff—for Medicaid purposes—remains a resident of the District of Columbia, Defendants must provide Medicaid benefits to Plaintiff.

62. In violation of the laws of the United States, Defendants have refused to accept Plaintiff's application for District of Columbia Medicaid benefits.

WHEREFORE, Plaintiff John Holmes prays for: (a) a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the District of Columbia is his "state of residence" as defined in 42 C.F.R. § 435.403 and that he is entitled to apply for District of Columbia Medicaid benefits; and (b) an injunction or other order directing the Defendants —including the Defendant District of Columbia Department of Human Services—to process his application for Medicaid benefits.

## COUNT II
*(Injunction; 42 U.S.C. §1983; United States Constitution)*

63. Plaintiff incorporates by reference his allegations contained in the previous and subsequent paragraphs of this complaint.

64. In the event it is determined that Plaintiff is not a resident of the District of Columbia, Plaintiff contends that Defendants' refusal to accept his application for District of Columbia violated his rights under the United States Constitution as stated herein.

65. By refusing to process and approve Plaintiff's application for District of Columbia Medicaid benefits unless and until he moves to the District of Columbia, under

circumstances in which Plaintiff cannot safely move to the District of Columbia even for the minimal period required to establish residency, Defendants have impeded Plaintiff's ability to travel from Maryland to the District of Columbia.

66.     Such refusal violates Plaintiff's rights under the Privileges and Immunities Clause of Article IV of the Constitution, the Privileges and Immunities Clause of the Fourteenth Amendment, and the Equal Protections Clause of the Fourteenth Amendment by improperly restricting his right to interstate travel.

67.     Moreover, Defendants' policy of refusing to accept an application for Medicaid benefits unless and until an applicant has established residency in the District of Columbia amounts to a residency requirement that is barred by the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment of the United States Constitution. *Shapiro v. Thompson*, 394 U.S. 618 (1969).

WHEREFORE, Plaintiff prays that the Defendants be enjoined from refusing to process his application for Medicaid benefits on grounds of lack of residency, and/or that the Court provide such other relief as the Court deems appropriate to facilitate Plaintiff's move to the District of Columbia.

Respectfully submitted,

_____
Patrick T. Hand
Bar ID No. 383379

4900 Massachusetts Avenue, N.W.
Suite 330
Washington, D.C.  20020
(202) 362-5070
PatrickTHand@aol.com

Guardian for John E. Holmes, Plaintiff

# APPENDIX 1

Government of the District of Columbia
Department of Health

Referral for Long Term Care

_____/_____/_____
Date of Referral

Service Requested
- ☐ Medical Day Care
- ☐ Community Residence Facility
- ☐ Elderly Waiver
- ☒ Nursing Home
- ☐ ICF/MR
- ☐ MR Waiver

Name of Patient   Holmes                    John
                  Last                      First                              MI

Current Address   4215 Massachusetts Ave. SE          WDC 20019

Phone ( 202 ) 548 - 1789        DOB _____ **REDACTED**        Sex   M

Marital Status   S      Birth Place   WDC

- ☐ Own Home   ☐ Alone   ☒ With Others   ☐ Steps/Barriers Present   ☐ Nursing Home
- ☐ CRF        ☐ ICF/MR  ☐ Hospital       ☐ Other

Responsible Person   Patrick Hand (guardian)          Address                Phone  202/895-1332

Next of Kin   Ms. Holmes (mother) same as pt.      Address        Phone   Same

Income Source and Amount   SSI $545        Health Insurance

Social Security #   **REDACTED**     Medicare #

Medicaid #   **REDACTED**

Hospital (Present/Last)   Washington Hospital Center   1350328
                                                        Hospital MR #

Referral Source and Contact Person   Heather Hauck, WHC   202-877-5777
                                     Name/Address/Phone        Admit Date      Discharge Date

Reason for Referral        ☒ Preadmission   ☐ Readmission   ☐ Spend Down
                                                            ☐ Private Pay
                                                            ☐ Medicare Conversion

Part A - (Receiving Facility Completes)

Payment Start Date Requested   _____/_____/_____      Facility Name   _____

Signature   _____   Title   _____   Date   _____/_____/_____

DHS 1728
R 06/08/00

Patient Name _____ MA # _____ 704/3645130

Treatments (List Type and Frequency)

☐ Decubitus Ulcer                    N.A

Location _____

Size _____

Treatment _____

☐  Other Treatments        ☐ Suctioning/Tracheostomy Care    ☐ Catheter Care
                           ☐ Gastrostomy Tube Care          ☐ Ventilator Dependent   N.A  —

Specify _____

☐ Habilitation Training
☐ Mini-mental exam, if available _____

Diet and Fluid Orders _Regular diet, no fluid restrictions_

Rehabilitation Needs (State Plan, By Whom, Frequency, To Improve or Maintain Function)

Physical Therapy _maintain ambulation c̄ walker / cane_

Occupational Therapy _____

Speech/Hearing Therapy _____

Equipment and Supplies _____

Services Needed    ☐ Podiatry    ☐ Social    ☒ Nursing    ☒ Medical

Pertinent social issues _pt. has episodes of agitation, can be verbally abusive - Never married / lives c̄ mother now who is not able to care for him due to own Medical status_

## Physician's Certification for Level of Care

I attest that the above information is correct and this patient is certified in need of the following service (check one)

☒ Nursing Home    ☐ Medical Day    ☐ ICF/MR    ☐ Elderly Waiver    ☐
☐ Community Residence Facility                                      MR Waiver

Physicians Name  _Kitonga P. Kiminyo, MD_          Kitonga Kiminyo, MD
                                                   Infectious Diseases
Address  _116 Irving St NW_           Signature    Physician #045039 Pager #9863

Date  _03 / 15 / 2002_               Phone  _( 202 ) 877 -7164_

## Part D - DFMC Use Only

Level of Care

Authorized Signature _____    Days Assigned ____

Comments _____    Date ____ / ____ / ____

Delmarva Foundation for Medical Care, Inc.
9240 Centreville Road,
Easton, Maryland 21601
(800) 999-3362 Phone        (800) 469-6851 Fax

DHS 1728
R 05/03/00

3

Patient Name _John Holmes_

**Part B - Patient Profile** (Referring Source - Social Worker, Nurse, or Counselor to complete)  MA # _704/3645130_

Code X = Yes

### Impairments
- [X] Speech  _hesitates/rambles_
- [ ] Sight
- [ ] Amputations _____ (Specify)
- [ ] Contractions _____ (Specify)
- [ ] Paralysis/Paresis _____

### Mobility
- [X] Ambulates Independently
- [X] Ambulates with Assistance
- [ ] Mobile with Assistance Devices
- [ ] Climbs Stairs
- [ ] Transfers Independently
- [ ] Transfers with Assistance
- [ ] Totally Dependent
- [ ] Chair - Fast  [ ] Bed - Fast

### Personal Care - Bathing
- [ ] Independent
- [ ] Needs Directions
- [X] Needs Assistance
- [ ] Totally Dependent

Dressing
- [ ] Independent
- [ ] Needs Direction
- [X] Needs Assistance
- [ ] Totally Dependent

### Bladder Function
- [ ] Continent
- [X] Occasional Incontinence
- [ ] Frequent Incontinence
- [ ] Total Incontinence
- [ ] Trainable
- [ ] Catheter _____ Specify

### Bowel Function
- [X] Continent
- [ ] Occasional Incontinence
- [ ] Frequent Incontinence
- [ ] Total Incontinence
- [ ] Trainable
- [ ] Colostomy

### Mental Status
- [X] Oriented
- [ ] Occasionally Disoriented
- [ ] Partially Disoriented
- [ ] Totally Disoriented
- [ ] Other

### Behavior
- [X] Cooperative
- [ ] Confused
- [ ] Wanders
- [ ] Combative
- [X] Other (Specify)
  _varies if agitated_

### Feeding
- [ ] Independent
- [X] Minimal Assistance
- [ ] Spoon Fed
- [ ] Nasogastric Tube
- [ ] Gastrostomy Tube
- [ ] IV Feedings

### Medication
- [ ] Takes Own
- [ ] Needs Supervision
- [X] Must be Given
- [ ] 0 - 2
- [X] ~~3 - 5 or psychotropics~~
- [X] 6+ or Insulin

### Degree of Supervision
- [ ] Occasional Direction
- [X] Frequent Direction
- [ ] Constant Direction

### Skin Integrity
- [X] Intact
- [X] Superficial Lesions
- [ ] Deep Lesions

Rehabilitation Potential  [ ] Yes
New Diagnosis  [ ] Yes
New Surgery  [ ] Yes

---

**Part C - Physician's Plan of Treatment** (Physician must complete, sign, and date) Please Be Specific!

Allergies _None known_

Primary Diagnosis _HIV disease_

Secondary Diagnosis _HIV encephalopathy; NIDDM_

Last Surgery & Date _NA_

Past Surgery (s) & Dates _none known_

Prognosis _fair_

Is patient free of infections tuberculosis? _____ Is patient confined to home? [X] Yes [ ] No

Goals of Treatment _maintain max. level of wellness, adherence to meds, prevent OI_  [X] Yes [ ] No [X] PPD [ ] CXR  Date _3/11/07_

BP _120/82_   Temp _98.9_   Pulse _90_   Respirations _16_

Medications (List Name, Dosage, Route, and Frequency)
_Combivir 1 tab po bid; Zithromax 600mg 1 tab bid q wk; Viracept 250mg 5 capsules BID po; dapsone 100mg po q other day x 5day; glipizide 5mg 1 po qd; haldol 2mg 1 po/bid; multivitamin 1 daily po; diflucan 150mg 1 _error_; neurontin 100mg 1 tab po bid_

---

# APPENDIX 2

Subj:    **Email from the EOM (Intranet Quorum IMA00479078)**
Date:    7/30/2007 4:23:02 PM Eastern Daylight Time
From:    customerservice.eom@dc.gov
To:      patrickthand@aol.com

Hello Mr. Hand:

Thank you for taking the time to address your concerns with me. This e-mail is in response to your request for assistance with Medicaid. I have contacted the Department of Human Services (DHS) to assist with your concerns. They had this to say:

IMA's normal business hours are 8:15 a.m. to 4:45 p.m., Monday, Tuesday, Thursday and Friday.  All IMA offices, except Northeast Service Center, are open until 8:00 p.m. on Wednesdays.  Customers are not admitted after normal business hours, unless an after-hours appointment has been made by an IMA staff member and the guard service has been notified to allow entry.

Medicaid applicants must prove that they are District residents before Medicaid benefits, including Long-Term Care benefits, can be approved.  Unless Mr. Holmes was placed in the Adelphi Nursing home by a District Government agency, his legal residence is in Maryland, as is indicated by his current receipt of Maryland Medicaid.   Mr. Holmes must re-establish District residency before the District can approve Medicaid.  There is no requirement to live in the District for a set period prior to eligibility.  Residency begins when the person starts living in the District with the intent to stay.

For future concerns or comments please feel free to e-mail me again at mayor@dc.gov

Sincerely,

Adrian Fenty

Mayor

# APPENDIX 3

## Your Information

| Last Name | First Name | Middle Name | Date of Birth | Telephone |
|---|---|---|---|---|
| Holmes | John | E | **REDACTED** | (202) 362-5070 |

| Current Address | Apt. | Mailing Address (if different) |
|---|---|---|
| 3000 McComas Avenue | | c/o Patrick Hand 4900 Massachusetts Avenue, NW #330 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Kensington | MD | | Washington | DC | |

**I am applying for:** ☒ Medical Assistance  ☐ Food Stamps  ☐ IDA (Interim Disability Assistance)

☐ TANF/GC (Temporary Assistance for Needy Families / General Assistance for Children)

**Note:** Your Food Stamp benefits start on the day that you apply. You can apply right away. Make sure to write down your name and address above and then sign at the bottom of this page.

## Expedited Food Stamps

You might be able to get Food Stamps in less than a week! To see if you qualify, please tell us:

1. Will your household income be more than $150 this month?  ◯ Yes ◯ No
2. Do you have more than $100 in cash or in the bank?  ◯ Yes ◯ No
3. Is your income this month more than your housing costs (rent and utilities)?  ◯ Yes ◯ No

If you answered NO to the questions above, then you may be eligible. Please tell us:

(a) What will be your total income this month?  $_____

(b) What did you pay for housing (rent and utilities) this month? $_____

## Authorized Representation

Do you want someone else to act for or represent you?  ◉ Yes ◯ No  If YES, please tell us:

| Name of Your Authorized Representative: | Address of Rep.: | Telephone of Rep.: |
|---|---|---|
| Patrick Hand, Guardian | 4900 Massachusetts Avenue, NW #330 WDC 20016 | (202) 362-5070 |

What do you want them to do?  ☒ Complete Interviews   ☒ Report Changes   ☐ Use EBT Card

## Signature

By signing below, I give my permission to DHS to get information about me. DHS can get this from my employer, landlord, bank, and utility company. I give all of these people my permission to give information about me to DHS. I believe that all of my information on this entire six-page form is correct. **I know that if I give any false information, I may be breaking the law. I know that state and federal officials will check this information. I agree to help with their investigations.**

I agree to follow the rules for DHS benefits. I have received a copy of these rules. I know that I will have to **recertify** for my benefits. I also understand that my child may get free health care through "HealthCheck."

**Authorized Representatives:** If the applicant cannot sign this form, you may sign it for them. By signing, you certify that this person wants to apply for benefits and agrees to the conditions above.

Signature X _Paul M. Hand, Guardian_____   Date _____   1 of 6 →

# APPENDIX 4

**From:** Perkins, Brenda (DHS) (DHS) <brenda.perkins@dc.gov>
**To:** Brown, Monica J. (DHS) (DHS) <Monica.Brown2@dc.gov>; patrickthand <patrickthand@aol.com>; Warren, Robert (DHS) (DHS) <robert.warren@dc.gov>
**Cc:** Williams, Daisy (DHS) (DHS) <daisy.williams@dc.gov>; Seymour, Anthea (DHS) (DHS) <Anthea.Seymour@dc.gov>; Wells, Ellen M. <Ellen.Wells@dc.gov>; Melder, Jay (DHS) (DHS) <jay.melder@dc.gov>
**Subject:** RE: Re: John E. Holmes/Application for D.C. Medicaid
**Date:** Mon, May 23, 2016 10:58 am

Good Morning:

Please prepare a response for the Director's signature to Patrick Hand, Attorney At Law, regarding his request for his guardian John E. Holmes to receive DC Medicaid. Based on Mr. Hand's correspondence, Mr. Holmes was placed in a Maryland facility by the DC Department of Health. His guardian, Mr. Hand, is a DC resident.

Thanks.

Brenda

CONFIDENTIALITY NOTICE: This email communication may contain private, confidential, or legally privileged information intended for the sole use of the designated and/or duly authorized recipient(s). If you are not the intended recipient or have received this email in error, please notify the sender immediately by email and permanently delete all copies of this email including all attachments without reading them. If you are the intended recipient, secure the contents in a manner that conforms to all applicable District of Columbia, state and/or federal requirements related to privacy and confidentiality of such information.

**From:** Warren, Robert (DHS)
**Sent:** Friday, May 20, 2016 4:29 PM
**To:** patrickthand@aol.com
**Cc:** Brown, Monica J. (DHS); Williams, Daisy (DHS); Perkins, Brenda (DHS); Seymour, Anthea (DHS); Wells, Ellen M.
**Subject:** Re: John E. Holmes/Application for D.C. Medicaid

Good afternoon Mr. Hand:

This e-mail is a follow-up to a voicemail message that you have just received from me. The Department of Human Services (DHS), Office of the General Counsel (OGC), is responding to your May 13, 2016 to DHS Director Laura Zeilinger regarding your client, John E. Holmes', application for District of Columbia (District) Medicaid. Unfortunately, Mr. Holmes presently is a resident of the State of Maryland and is therefore ineligible to receive public assistance benefits in the District at this time. In your letter, you state that Mr. Holmes "*desires to move to the District of Columbia.*" When Mr. Holmes becomes a resident of the District, he would then be eligible to apply for and receive public assistance benefits through the DHS Economic Security Administration (ESA). The ESA Administrator, Ms. Anthea Seymour, and Deputy Administrator, Ms. Ellen Wells, are copied above.

Best regards,

Robert C. Warren, Jr.
Assistant General Counsel
Office of the General Counsel

D.C. Department of Human Services
64 New York Avenue, N.E.
6th Floor
Washington, DC 20002
(202) 671-4452
(202) 671-4454 (facsimile)
Robert.warren@dc.gov (e-mail)